UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARK LEVY,

                Plaintiff,    :   No. 07 CV 896 (CM)

                  v.    :   **Oral Argument Requested**

YAACOV KOREN and JOHN DOES 1-20    :

                Defendants,    :
  -and-
                                           :
COMVERSE TECHNOLOGY, INC.
                                           :
                Nominal Defendant.
------------------------------------------------------------------x

# NOMINAL DEFENDANT COMVERSE TECHNOLOGY, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

                      WEIL, GOTSHAL & MANGES LLP
                      Miranda S. Schiller
                      Matthew L. Mustokoff
                      Michael J. Firestone
                      767 Fifth Avenue
                      New York, New York 10153
                      (212) 310-8000

                      *Attorneys for Nominal Defendant Comverse Technology, Inc.*

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| ARGUMENT | | 1 |
| A. | Koren Was Not A Significant Policy Maker Of The Issuer, Comverse | 1 |
| B. | CIL Was Not A Principal Business Unit Of Comverse | 4 |
| C. | Koren Was Not A Vice President Of The Issuer | 6 |
| D. | Koren's Directorships Do Not Make Him An Officer Of Comverse | 7 |
| E. | Misuse Of Inside Information Alone Does Not Trigger Section 16(b) Liability | 8 |
| F. | The Special Committee's Findings Regarding Koren Are Relevant | 9 |
| G. | A Request For Additional Discovery Cannot Defeat Summary Judgment | 9 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

In re CNET Networks, Inc., 483 F. Supp. 2d 947 (N.D. Cal. 2007)..............................................9

C.R.A. Realty Corp. v. Crotty, 878 F.2d 562 (2d Cir. 1989)...............................................6, 8, 9

Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208 (S.D.N.Y. 2003)..........10

Global Network Commc'ns Inc. v. City of New York, 458 F.3d 150 (2d Cir. 2006).....................9

Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993)...........................................................................10

Seneca Beverage Corp. v. HealthNow New York, Inc, et al., 200 F.App'x 25 (2d Cir. 2006).........................................................................................................................................10

Steel Partners II, L.P. v. Bell Indus., Inc., 315 F.3d 120 (2d Cir. 2002).......................................8

Trammell v. Keane, 338 F.3d 155 (2d Cir. 2003)......................................................................10

Trebor Sportswear Co., Inc. v. The Limited Stores, 865 F.2d 506 (2d Cir. 1989).......................10

**Statutes**

17 C.F.R. § 240.16a-1(f)..............................................................................................................6

**Other Authorities**

SEC Release No. 34-28869, 1991 WL 292000 (Feb. 21, 1991)...............................................6, 8

PETER J. ROMEO AND ALAN L. DYE, SECTION 16 SECURITIES EXCHANGE ACT OF 1934, INSIDER REPORTING AND SHORT-SWING LIABILITY, TREATISE AND REPORTING GUIDE, (2d ed. 2004) ..............................................................................................................................8

Nominal Defendant Comverse Technology, Inc. ("Comverse" or the "Company") submits this reply memorandum of law in further support of its motion for summary judgment ("Def. Br.") and in response to plaintiff's opposition brief ("Pl. Br.").

## ARGUMENT

### A.     Koren Was Not A Significant Policy Maker Of The Issuer, Comverse

Comverse moved for summary judgment on plaintiff's Section 16(b) claim because Yaacov Koren was not an officer of Comverse, nor has he ever functioned as an executive officer of Comverse by performing significant policy-making functions for the Company. In addition, the subsidiary which Koren headed, Comverse Investments Ltd. ("CIL"), was not a principal business unit of Comverse. Its parent company, CTI Capital Corp. ("CTI Capital"), never contributed more than 9.6% of Comverse's pro forma net income in any one year. Thus, Koren's two purchases and sales of Comverse equity securities in 2000 were not proscribed by Section 16(b). The sworn testimony, affidavits, and contemporaneous documents demonstrate the following facts which are dispositive of plaintiff's claims:

- Koren did not supervise Comverse's employees, or the employees of its subsidiaries other than the nine CIL employees.

- Koren did not hold a corporate title at Comverse. Comverse's senior executives and directors did not regard Koren as an officer.

- Koren did not attend Comverse Board of Directors meetings, nor was he involved with Comverse's governance.

- Koren had no role in deciding what products or services Comverse would develop, or in the actual development or marketing of its products and services, from which it derived 90% of its revenue.

- Koren did not receive Comverse's quarterly and annual financial reports or drafts thereof prior to their public release.

- An independent investigation into stock option grants to numerous Comverse employees resulted in a finding that Koren did not violate Section 16(b).

See Def. Br. at 4-12. Plaintiff disputes the foregoing facts with nothing more than his counsel's unsupported conjecture and mischaracterizations of emails; this does not suffice to defeat summary judgment. Def. Br. at 13-14.

Comverse produced to plaintiff every single communication in its possession between Koren and Comverse's executive officers and directors from 1999 through 2001, as well as virtually all such communications for a 14-year period.[1] Since Koren headed up the Comverse subsidiary that was responsible for portfolio investments, not surprisingly, those emails primarily pertain to numerous potential investments which Koren reviewed; they do not relate to Comverse's core communications-enabling business. Plaintiff misleadingly strings together snippets of these emails to misportray Comverse as a giant hedge fund, whose meteoric growth was driven not by its own product development, research and marketing, but by investments in other companies that were supposedly orchestrated by Koren. The record belies this claim: Koren had no involvement in Comverse's core business, nor did he conceive of, direct or orchestrate a single acquisition that was material to Comverse.

The Company's 2000 Annual Report identifies Comverse's six strategic acquisitions. Ex. A at 7, F-13–F-15. <u>Koren had no involvement in any of those acquisitions.</u> Supp. Koren Affidavit, at ¶ 15. Plaintiff does not identify any investment by Comverse that was strategic to Comverse's business and which was conceived of or orchestrated by Koren. CIL made passive investments in the securities of other companies; those companies were not managed or controlled by Comverse, and the revenue from their product sales was not received by Comverse.

Plaintiff claims that Comverse considered investments in five start-up technology companies: Adyoran, XDrive, Onset Technology, More.com, and Openmobile. Pl. Br. at 12.

---

[1] See Affidavit of Matthew Mustokoff ("Mustokoff Aff."), ¶¶ 8-10. Citations herein to "Ex. __" refer to exhibits attached to the Second Affidavit of Michael J. Firestone dated March 24, 2008.

There is no evidence that CIL, CTI Capital or Comverse acquired or invested in any of these companies.

Plaintiff also claims that Koren participated in spin-offs of two business units of Comverse Network Systems, Ltd. ("CNS") – WydeBand and Mobile Wisdom. Pl. Br. at 15.[2] Neither of these spinoffs were material to Comverse; neither warranted the issuance of a press release or Form 8-K announcement. WydeBand did not contribute anything to Comverse's net income in 2000. CNS did not even invest in Mobile Wisdom until 2003, and in fact, the investment only yielded losses for Comverse. Supplemental Affidavit of Paul Baker ("Supp. Aff."), ¶¶ 4-5, Ex. A; Firestone Aff., Ex. G at 59:11-12. Assisting in spin-offs of entities that were immaterial to CNS's business did not make Koren a significant policy-maker of Comverse.

Next, plaintiff claims that Koren was involved in a joint venture between Virgin Holdings, Inc./EMI Recorded Music which resulted in the formation of Comverse Media, a subsidiary of Comverse. Pl. Br. at 16-17. Comverse Media, which was incorporated in 2001, never generated any income, other than in 2002 when it generated net income of $44,000. Supp. Aff., ¶¶ 2-3. Therefore, Comverse Media was not "strategic" to, nor did it even contribute to, Comverse's growth.

Plaintiff claims to have established through emails that Koren "orchestrated" the initial public offering ("IPO") of Starhome, a Comverse subsidiary, but omits the quote from Koren's reply email to Kreinberg that he is "<u>not involved in this issue [Starhome's IPO] and [doesn't] know where it stands</u> . . . ." (emphasis added). Skovron Decl., Ex. 12 (CT000725), Pl. Br. at 15. Next, plaintiff cites strings of emails in which Koren's name merely appears on the "cc:" line,

---

[2] While plaintiff claims that Koren participated in spin-offs of two other units, Voice CD and TVGate, Koren testified that the spin-offs of these units never occurred. Firestone Aff., Ex. G at 62:12-15. Plaintiff cites no contrary facts.

and then erroneously asserts that they reflect that Koren orchestrated strategic acquisitions for Comverse. Pl. Br. at 11-13. But a review of those emails reveals that Koren did not even offer his views on the proposed investments, much less direct, conceive of or orchestrate acquisitions on behalf of Comverse as opposed to CIL.

### B. CIL Was Not A Principal Business Unit Of Comverse

CIL was not one of Comverse's principal business units, nor was it engaged in Comverse's core business. Comverse, a worldwide market leader in value-added telecommunications services, "designs, develops, manufactures, markets and supports computer and telecommunications systems and software for multimedia communications and information processing applications." Ex. A at 1. CIL, by contrast, made passive investments in the securities of other companies. Def. Br. at 6-7. A comparison of Comverse's investment in product development to CIL's annual budget of approximately $1 million places in perspective CIL's relative immateriality. Firestone Aff., Ex. G at 34:7-14. For example, in 2000 alone, Comverse spent $232 million on product and service research and development, and its cost of goods for the products and services it delivered came to $430 million. Ex. A, at 21. These costs vastly exceed the $115 million invested by CIL in the securities of other companies over its entire 14-year history, or the $33.6 million CIL invested in 2000. Ex. B; Koren Affidavit, ¶ 15.

Plaintiff does not dispute that neither CIL nor Koren had any involvement in the development, sale or management of Comverse's core products and services. Instead, plaintiff misleadingly asserts that through CTI Capital and Comsor, Comverse made numerous synergistic acquisitions which enabled it to grow into a communications software giant. Pl. Br. at 12. To support this claim, plaintiff alleges that two investments, one in Speedwise Technologies, Ltd. ("Speedwise") and the other in Orsus Solutions ("Orsus"), were orchestrated by Koren and were integral to Comverse's growth. Had plaintiff bothered to perform a simple

Yahoo search on Speedwise or Orsus, he would have discovered they could not have been the engines of Comverse's growth, as he erroneously asserts. Speedwise was a tiny company, with 40 employees, half of whom were terminated in 2002, and neither company was ever acquired by Comverse. Ex. C. CTI Capital purchased 10% of Speedwise's common stock for $1.03 million in June 2000, with an option to buy additional shares that was never exercised. Exs. D and E. Speedwise contributed nothing to Comverse's net income in 2000. Ex. F. Plaintiff claims that Speedwise was strategically significant to Comverse because it enabled Comverse to launch new products. Pl. Br. at 13. But Comverse did not even acquire Speedwise. Ex. E. More importantly, Koren had no involvement in developing or marketing any products for Comverse or Speedwise, and plaintiff cites no such evidence.

Plaintiff concedes that Orsus, a small start-up company, was a "minority investment of $10 million." Pl. Br. at 14. Like Speedwise, the Orsus investment, which was made through Comsor, contributed nothing to Comverse's net income in 2000. Ex. G. Further, plaintiff fails to identify any Orsus product that Koren had any involvement in developing or marketing.

Plaintiff claims that investments recommended by Koren generated the "cash that enabled Comverse to expand its operations . . . which was the driving force behind Comverse's growth and the accompanying 40% increase in its stock price during 2000." Pl. Br. at 28. The absurdity of this assertion is illustrated by the fact that CIL was a <u>net drain</u> on Comverse's cash. From 1994 through 2007, CIL, through its parent, CTI Capital, or the Comsor Fund joint venture, invested approximately $115 million in 80 portfolio companies, but realized a net loss on those investments of $13.8 million. Ex. B; Koren Aff. ¶ 15. Koren was responsible for selecting a single investment by CIL in 2000 that yielded a substantial return: the purchase of 564,114 shares of Chromatis' stock. Supp. Aff. ¶ 6. Chromatis was acquired at a significant

premium by Lucent in 2000. Ex. H. It is the $13.2 million return on this single investment that largely accounted for CIL contributing 9.6% of Comverse's net income in 2000. Ex. B.

Plaintiff cites no support whatsoever for his equally specious assertion that acquisitions orchestrated by Koren led to a 40% increase in Comverse's stock price. Pl. Br. at 19. The only evidence on how investors valued Comverse – based on the growth of revenues from its products and services – is to the contrary. See Firestone Aff., Ex. B at ¶ 5.

### C. Koren Was Not A Vice President Of The Issuer

Unable to demonstrate that Koren falls within the definition of officer in Rule 16a-1(f) applicable to the head of a subsidiary who does not hold a title with the issuer, plaintiff claims for the first time that Koren was a "vice president of the issuer in charge of a principal business unit." Pl. Br. at 23. Rule 16a-1(f) includes in its definition of officer, "any vice-president **of the issuer** in charge of a principal business unit." 17 C.F.R. § 240.16a-1(f) (emphasis added). Koren does not fall within this definition. First, CIL was not a principal business unit of Comverse. See Def. Br. at 4-7, 19-21 and Point B, supra. Comverse did not hold CIL out as a principal business unit, nor did the market regard it as a principal business unit. Baker Aff. ¶¶ 5-6. Second, Koren was not a Vice President of Comverse. Rule 16a-1(f) does not state that the heads of business units who are the functional equivalent of a vice president of the issuer are Section 16(b) officers. Rather, the rule expressly addresses liability of officers of subsidiaries who are not vice presidents: to fall within Rule 16a-1(f), they must be "significant" policy-makers of the issuer. 17 C.F.R. 240.16a-1(f). The SEC's adopting release makes clear that regardless of whether one holds an officer title, including a title of vice president, they are not deemed an officer under Rule 16a-1(f) unless they perform significant policy-making functions for the issuer. See SEC Release No. 34-28869, 1991 WL 292000, at *4 (Feb. 21, 1991); see also C.R.A. Realty Corp. v. Crotty, 878 F.2d 562, 566 n.3 (2d Cir. 1989).

**D.    Koren's Directorships Do Not Make Him An Officer Of Comverse**

Next, plaintiff claims that Koren was the functional equivalent of a Comverse officer because he served as a director of five of Comverse's 67 subsidiaries. Pl. Br. at 39. This is demonstrably false. Koren served as a director of three Comverse subsidiaries: Telemesser, Ulticom, and CTI Capital, the parent company of CIL. Ex. A, at Ex. 21; Skovron Decl., Ex. 15. The other companies on whose boards he served were not subsidiaries of Comverse. Id. Rather, they were "portfolio" companies in which Comverse made passive investments; these companies were not managed or controlled by Comverse. Koren Aff., ¶ 17. As Koren testified, his service as an outside director of such companies was consistent with a practice in the venture capital community of investors designating a representative as a board member "in order to better monitor the investment." Firestone Aff., Ex. G at 79:9-16.

Koren's directorships at Telemesser and Ulticom do not establish that Koren performed a significant policy-making role at Comverse.[3] Plaintiff claims that Koren played a major role in Ulticom's IPO in April 2000, and that the IPO was material to Comverse since it increased Comverse's cash position by 21% over the prior year. Pl. Br. at 18, 27-28. Ulticom's IPO of its treasury shares was publicly reported on January 18, 2000, when it filed a Form S-1 with the SEC, four months before its April 2000 IPO. Exs. I and J. The proceeds from the Ulticom IPO were not dividended up to Comverse; they were retained by Ulticom. Exs. K and L. Koren, who joined the Ulticom board in January 2000, did not operate Ulticom's business, nor did he develop its product. Comverse did not sell any of its Ulticom shares in the IPO or secondary offering. Ex. M. Comverse's ownership interest in Ulticom was reduced to 80.4% as a result of

---

[3] In 2000, revenue from Telemesser's sales ($4.065 million) accounted for less than 1% of Comverse's consolidated revenue. Firestone Aff., Ex. H. Ulticom contributed less than 3.3% and 3.6% of Comverse's consolidated revenue and net income respectively in 2000. Firestone Aff., Ex. B, ¶ 11.

the IPO. Id. Koren's role as a director of a subsidiary does not turn him into an officer of the parent, particularly where his duties as an Ulticom director entailed participating in three or four annual telephonic board meetings. Firestone Aff., Ex. G at 76:1-78:22. Nor does Koren's service as an Ulticom director during a year it had an IPO elevate him to a significant policy-maker of Comverse even in combination with his duties as the head of CIL. To the extent plaintiff is claiming that the amount raised from the Ulticom IPO was material inside information – notwithstanding that the proposed IPO was a matter of public record months before it occurred – such access does not give rise to Section 16(b) liability. Def. Br. at 21-22.

### E. Misuse Of Inside Information Alone Does Not Trigger Section 16(b) Liability

Comverse demonstrated that Koren's and CIL's activities were less significant to the Company than those of the defendant in C.R.A. Realty, 878 F.2d 562, who was not a Section 16(b) officer. Def. Br. at 18-19. Plaintiff responds that C.R.A. Realty is no longer good law because it predates the 1991 adoption of Rule 16a-1(f). Pl. Br. at 35. C.R.A. Realty has been cited with approval by both the SEC and the Second Circuit after the 1991 amendments, and its holding is consistent with Rule 16a-1(f).[4]

The defendant in C.R.A. Realty, a vice president of United Artists, was the head of a business unit which contributed 35-36% of the gross revenue of the issuer's core business, and 15-18% of its total gross revenue, yet the Second Circuit affirmed the trial court's decision that he was not a Section 16(b) officer. Plaintiff claims (at 37-38) that the only reason the defendant

---

[4] See SEC Release No. 34-28869, 1991 WL 292000, at *4 n. 25, 26 (citing to C.R.A. Realty with approval in adopting Rule 16a-1(f)); Steel Partners II, L.P. v. Bell Indus., Inc., 315 F.3d 120, 125 (2d Cir. 2002). See also PETER J. ROMEO AND ALAN L. DYE, SECTION 16 SECURITIES EXCHANGE ACT OF 1934, INSIDER REPORTING AND SHORT-SWING LIABILITY, TREATISE AND REPORTING GUIDE, § 2.01[2][b] ("The definition of 'officer' adopted in 1991 effectively shifted the focus under the SEC's rules from a person's title to the person's duties"); C.R.A. Realty, 878 F.2d at 566 ("it is an employee's duties and responsibilities – rather than his actual title – that determine whether he is an officer within the purview of § 16(b)").

in C.R.A. Realty was not liable as a Section 16(b) officer was because he did not have access to material non-public information since the information to which he was privy was publicly disclosed on a daily basis. However, access to inside information does not alone determine whether one is a Section 16(b) officer, and C.R.A. Realty did not so hold. Def. Br. at 21-22.

**F.   The Special Committee's Findings Regarding Koren Are Relevant**

Comverse demonstrated that following an internal investigation into its option awards, a Special Committee of independent Comverse directors concluded that Koren did not violate Section 16(b). Plaintiff claims that the findings of the Special Committee and their counsel (Daniel Horwitz of Dickstein Shapiro LLP) are irrelevant because plaintiff has standing to bring this action regardless of the Special Committee's conclusion that it is meritless. Plaintiff misperceives the significance of the Special Committee's findings: they constitute additional extrinsic evidence that is properly weighed at summary judgment.[5] Because plaintiff cannot demonstrate that the Special Committee was not independent, or that its investigation was not thorough, and since Mr. Horwitz has confirmed that the investigation included a review of the option awards at issue here, the Committee's conclusions that Koren's stock option exercises did not violate Section 16(b) are entitled to great weight. See Firestone Aff., Ex. Q at ¶¶ 6-7.

**G.   A Request For Additional Discovery Cannot Defeat Summary Judgment**

Finally, plaintiff asks the Court to defer ruling on this motion, claiming he has not had adequate discovery. But plaintiff misstates the discovery record and rulings. Plaintiff propounded 57 separate document requests to defendants; Magistrate Judge Freeman conducted

---

[5] See Global Network Commc'ns Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) ("summary judgment motion is fact-intensive. It is the proper procedural device to consider matters outside the pleadings, such as facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence."). The Court may even consider a special committee's conclusions on a motion to dismiss a shareholder derivative action for breach of fiduciary duty. See In re CNET Networks, Inc., 483 F. Supp. 2d 947, 963, 966 (N.D. Cal. 2007).

two discovery conferences during which she ruled on many of the same discovery claims plaintiff seeks to relitigate in the guise of opposing summary judgment.[6] See Mustokoff Aff. Plaintiff never appealed the Magistrate Judge's discovery rulings as required by Rule 72, Fed. R. Civ. P. Thus, plaintiff is precluded from challenging those rulings. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (failure to file timely objections to magistrate's report barred further judicial review and no circumstances warranted excusing the default in the interests of justice). Nor can plaintiff defeat summary judgment by belatedly complaining about the scope of discovery this Court ordered on October 12, 2007.[7]

## Conclusion

For the reasons stated above, and those set forth in Comverse's opening brief, Comverse requests that plaintiff's Complaint be dismissed in its entirety and with prejudice.

Dated: March 24, 2008

/s/ Miranda S. Schiller
Miranda S. Schiller (MS-9456)
Matthew L. Mustokoff (MM-9507)
Michael J. Firestone (MF-8577)
WEIL, GOTSHAL & MANGES LLP

---

[6] Plaintiff (at p. 42) cites Seneca Beverage Corp. v. HealthNow New York, Inc, et al., 200 F. App'x 25 (2d Cir. 2006), for the proposition that summary judgment is improper where the non-moving party has not had an opportunity to conduct sufficient discovery. In Seneca Beverage, the non-moving party took no discovery whatsoever prior to summary judgment, whereas here, plaintiff has taken discovery on the only issue material to this action. In Trammell v. Keane, 338 F.3d 155 (2d Cir. 2003), and Trebor Sportswear Co. v. The Limited Stores, 865 F.2d 506 (2d Cir. 1989), also cited by plaintiff, summary judgment was affirmed despite requests for further discovery. The court in Trebor held that there was no need for further discovery because the non-moving party "had ample time to conduct discovery" and had "proffered no persuasive basis for the district court to conclude that further discovery would yield" evidence going to "the nub of appellee's motion for summary judgment." 865 F.2d at 512.

[7] See Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 217 (S.D.N.Y. 2003) ("The Court is persuaded that ample time for discovery was afforded . . . . [Plaintiff's] objection to the lack of discovery does not persuade the Court that [defendant's] motion for summary judgment should be denied").

767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000

*Counsel for Nominal Defendant Comverse Technology, Inc.*